Argued March 6, affirmed May 24, 1973

# OREGON SUMMER HOME OWNERS ASSOCIATION et al, *Appellants, v.* JOHNSON, *Respondents.*

510 P2d 344

*Henry L. Bauer,* Portland, argued the cause for appellants. With him on the briefs were Barton C. Bobbitt and Bauer, Murphy, Bayless & Fundingsland, Portland.

*Ted E. Barbera,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and Alfred B. Thomas, Assistant Attorney General, Salem.

Before McAllister, Presiding Justice, and Denecke, Holman, Howell and Bryson, Justices.

DENECKE, J.

The issue is the taxability of plaintiff summer homeowners' interests in land which is the property of the United States Government and administered by the Forest Service. Plaintiffs' interests are in the form of special-use permits to build recreational residences. The Tax Court held the interests taxable and the homeowners appeal. 5 OTR Adv Sh 68.

The taxing authorities are proceeding pursuant to ORS 307.060, which provides: "Real and personal property of the United States or any department or agency thereof held by any person under a lease or other interest or estate less than a fee simple, other than under a contract of sale, shall be assessed and

taxed * * *." The question is whether this statute authorizes the taxing authorities to tax plaintiffs' interests in the federal lands.[1]

The parties agree that *Sproul v. Gilbert,* 226 Or 392, 359 P2d 543 (1961), is controlling. They disagree upon the application of the *Sproul* case to the present circumstances.

At issue in *Sproul* was the taxability of grazing "leases" entered into between the "lessees" and the United States pursuant to the Taylor Grazing Act. 43 USCA § 315m. We held the grazing "leases" were taxable; however, grazing "permits" were not. For our present purposes ORS 307.060 is in the same form now as it was when *Sproul* was decided.

██ We held, generally, in *Sproul* that the statute is designed to tax only possessory interests. 226 Or at 403, n 1. If the interest is less than possessory it is a license and not taxable. 226 Or at 403. Whether the person has a possessory interest depends upon whether the person has "sufficient control over the premises to warrant the label of possession." 226 Or at 406.

In *Sproul* the document by which plaintiff gained his interest was labeled "lease" and his payments termed "rentals." We were of the opinion that while the terminology is not controlling, it is somewhat persuasive. The interest was in a certain described area. The "lease" provided that no other person could use the described area for grazing; however, representatives of the United States, miners, prospectors, hunters and fishermen were granted access. The default clause was similar to that found in a traditional

---

[1] Plaintiffs pay an ad valorem tax on the improvements they have erected on the land; this tax is not in issue.

lease. As in a lease, it was provided expressly that the promises were to run with the land.

Use was restricted to grazing. The United States reserved the power to reduce grazing area or otherwise dispose of the land if it became required for certain needs; in the latter event the "lessee" was to be compensated. We concluded the revocability of the occupant's interest and the restriction of use to one of the land's few suitable uses did not prevent the interest of the occupant from being classified as a possessory interest.

On the other hand, we held that the interest secured under a grazing "permit" was not a possessory interest. The primary difference between the interest secured under a "permit" and the interest secured under a "lease" was that under a permit the permittee did not receive the exclusive grazing rights in any particular area. Instead, the permittee received the right to graze so many animals for a certain period of time in a grazing district. Similar permits could be granted to other ranchers to graze animals in the same district. The Taylor Grazing Act § 315b expressly provides that the interest granted by a permit "shall not create any right, title, interest, or estate in or to the lands."

The homeowners in the present case secured their interests pursuant to 16 USCA § 497, which provides that the Secretary of Agriculture is authorized "(b) to permit the use and occupancy of suitable areas of land within the national forests, not exceeding five acres and for periods not exceeding thirty years, for the purpose of constructing or maintaining summer homes and stores."

The document transferring the interest to the

homeowners is entitled, "Term Special Use Permit." Only in one place does the document use the term "lease" and there, in paragraph 17, it states, "[t]he permittee may sublease" with the consent of the government. It states that the "permittee" is authorized to use the land for a residence. The sample permit states that it covers .25 acres and describes the property by lot and tract. An annual payment is required, and is referred to as a "fee." The permittee must use the premises at least 15 days a year but cannot use it as a fulltime residence. Plans for any improvements must be approved by the Forest Service. There are other restrictions on use commensurate with maintaining the area as a woodland recreational area.

The permit states it is not transferable; however, the permit further provides that it can be transferred if the transferee is granted a permit by the Forest Service.

The sample permit states it is for a period ending December 31, 1988, with a ten-year extension if the permittee is not notified to the contrary by 1978. At the end of the term the permittee is required to remove the improvements. If the Forest Service finds "that public interest requires termination of this permit," it can terminate the permit before the expiration of the term; however, in such event the permittee must be paid either the value of the improvements or the cost of moving them.

■ A comparison of the interest held under the Forest Service permit and that held under a grazing lease shows some similarities and some dissimilarities. Unlike the grazing lease, the Forest Service permit is not stated in terms of a lease. However, as we observed in *Sproul,* the language a party uses "does not

*ipso facto* determine the nature of the legal relationship created," but is an aid to construction. 226 Or at 402.

The revocability of the respective interests in generally similar. As we pointed out in *Sproul*, this feature is not a controlling factor in determining the nature of the interest. Similar to the Sproul grazing lease, and dissimilar to a grazing permit, the Forest Service permit is for a specific area, in the sample, .25 acres described as Lot 22, Tract C.

The most important factor is the degree of exclusiveness of use and the amount of control that the "permittee" has and can exercise.

The homeowners contend that the only exclusive possession enjoyed by the permit holder is within the confines of his residence. Of course, completely exclusive possession within the confines of one's residence is the highest possession one can have in that limited area. They argue that the rest of the tract must be shared with the public at large. We are not as certain as plaintiffs that the permit owner has no more rights in his lot, outside the confines of his residence, than the public has. Assuming plaintiffs are correct, the right of the public to come upon the permittee's lot is similar to the right of the public to come upon the grazing land that Sproul leased; that is, miners, prospectors, hunters and fishermen, etc. The record indicates that the lot lines of the permittees normally do not extend to the shoreline of bodies of water near the homesites; therefore, the numbers of the public traversing the permittee's lot ordinarily will be small as the traffic normally is close to the shoreline.

The Forest Service has substantially limited

the use of the lot; however, most of the limitations are of the character that the owner of the fee would impose upon himself. For example, most owners of fee titles in areas such as this build recreational-type homes and live in them for only a part of the year. In *Sproul* we pointed out that "a leasehold or other corporeal interest may be created even though the transferee has the right to use the premises only for a specified limited purpose." 226 Or at 411.

■ We conclude that the interest transferred by the Forest Service permit is a possessory interest comparable to that transferred by the grazing lease in *Sproul* and is taxable.

Plaintiffs place heavy emphasis on an amendment to the applicable statute proposed by the State Tax Commission which the legislature failed to adopt.

ORS 307.060 was originally enacted in 1947. Oregon Laws 1947, ch 202, in language, for our purposes, is similar to the present statute. In 1953 the Tax Commission, through the House Taxation Committee, proposed that the legislature add to the categories of taxable interest, property held "under right or privilege." The Tax Commission stated that this amendment was proposed "to clarify this provision and clearly extended to those situations where public lands are being used and occupied for private purposes although the legal relationship between the parties might not spell out a lease or rental in technical terms."

As stated, the amendment was not enacted into law and plaintiffs contend this is strong proof that the legislature did not intend that the statute would permit the taxing of an interest such as that created by Forest Service permits.

*Sproul v. Gilbert,* supra (226 Or 392), was decided seven years after the proposed amendment. It held that ORS 307.060 authorized the state to tax a possessory interest. We have here held that plaintiffs had a possessory interest; therefore, the proposed amendment is not persuasive.

■ Plaintiffs also contend the valuation of their interests by the various county assessors was incorrect.

None of the plaintiffs are contesting the valuation of their particular property. Rather, they are contesting the appraisal methods used by the various assessors.

This is not an appropriate proceeding to determine, in the abstract, what should be the correct appraisal method. Those questions should be determined in a proceeding in which a permittee is contesting the valuation of his particular property. Similarly, that is the type of proceeding in which to decide plaintiffs' claim that their rights under Art IX, § 1, uniformity of taxes, were violated because of a disparity in the methods of assessment.

Affirmed.