IN THE TAX COURT OF THE
STATE OF OREGON

POWER RESOURCES COOPERATIVE

*v.*

DEPARTMENT OF REVENUE

(TC 4032)

Stephen B. Hill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, represented Plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented Defendant.

Decision for Defendant rendered July 31, 1998.

## CARL N. BYERS, Judge.

Plaintiff, a centrally assessed utility, appealed the assessed value of its property for the 1996-97 tax year. It claimed that its interest in an electrical transmission grid is exempt from taxation. Defendant denied the claim and Plaintiff appealed to this court. This matter is now before the court on cross motions for summary judgment and stipulated facts.

### FACTS

Originally organized as Pacific Northwest Generating Cooperative (PNGC), Plaintiff is an electrical cooperative with some 13 members. In 1992, Plaintiff entered into a "Power Purchase Agreement" with the Turlock Irrigation District (Turlock) in which Turlock acquired rights to all of Plaintiff's share of electricity produced by the Boardman Coal Plant, approximately 50 megawatts (MW), until January 1, 2019. The agreement required Plaintiff to make its best efforts to ensure that the power was transmitted on the Pacific Northwest (PNW) AC Intertie. The PNW AC Intertie is an electrical power transmission system, or grid, extending from the John Day substation to the California-Oregon border.[1] The system is owned by the federal government through its agent, Bonneville Power Administration (BPA).

In 1994, Plaintiff entered into a PNW AC Intertie Capacity Ownership Agreement (Intertie Agreement) with BPA. The Intertie Agreement specifies that Plaintiff has a

---

[1] The Intertie is part of a much larger electrical transmission system owned by the United States government which extends from British Columbia, Canada to the United States-Mexico border.

"Capacity Ownership Share," which is defined as the megawatt amount of BPA's rated transfer capability "owned by PNGC [Plaintiff] pursuant to this agreement." Plaintiff purchased 50 MW of capacity at a cost of $10,750,000. In addition, Plaintiff is obligated to pay its proportionate share of operating expenses, including repairs, reinforcements, and replacements. Plaintiff shares the Intertie with eight others, among which are the City of Seattle and Portland General Electric.

To conform with its Turlock agreement, Plaintiff amended the Intertie Agreement to stipulate that only Plaintiff or its designee could submit power schedules on Plaintiff's behalf at any one time. Plaintiff then designated Turlock as its scheduling agent for the duration of Turlock's use of the Intertie. Absent advance notice, neither Plaintiff nor Turlock may use the Intertie.

Plaintiff is subject to central assessment as a designated utility under ORS 308.505 to ORS 308.565.[2] In making the assessment, Defendant asserts that Plaintiff's use of the Intertie renders that portion or percentage subject to property taxation under ORS 307.060. In the alternative, Defendant asserts that even if Plaintiff does not have a taxable interest under ORS 307.060, the Intertie Agreement is a form of intangible property as defined by ORS 307.020(1) and is taxable under ORS 308.510.

Plaintiff argues that it does not have exclusive use or sufficient control of the property to subject it to taxation. Plaintiff also asserts that the contract is not intangible property subject to taxation. Because the court determines that Plaintiff has sufficient possession of its portion of the Intertie to render it taxable, whether the contract is taxable as an intangible is not addressed.

## ISSUE

Is the portion of the PNW AC Intertie used by Plaintiff taxable and assessable to Plaintiff under ORS 307.060?

---

[2] All references to the Oregon Revised Statutes are to 1997.

## ANALYSIS

■     The subject property is owned by the United States government and, as such, is generally exempt from taxation. ORS 307.040. However, property owned by the government but held by a taxable entity under a lease or other interest not amounting to fee simple can be assessed at its full value against the taxable user. ORS 307.060 provides:

> "Real and personal property of the United States or any department or agency thereof held by any person under a lease or other interest or estate less than a fee simple, other than under a contract of sale, shall be assessed and taxed as for the full assessed value thereof subject only to deduction for restricted use."

■     The statute does not define what constitutes an "other interest or estate." However, Plaintiff points out that this court has previously determined, in *Jones Intercable, Inc. v. Dept. of Rev.*, 12 OTR 436, 441 (1993), that the test for exclusive possession under ORS 307.060 is the same as that under ORS 307.110. Consistent with ORS 307.110, the department has promulgated a rule that provides as follows:

> "(1)   *Qualifying Conditions.* * * * A lease or other possessory interest exists if the occupant is granted exclusive possession of a definitely described **area** for a specified period of time (**term**).

> "(2)   *Exclusive Possession.* The test is whether the occupant has sufficient control over the premises to warrant the label of possession. If the occupant can exclude others, including the owner (except for inspection, making repairs etc.) the occupant has possession. But, if the premises must be shared with others, such as a common pasture, the occupant does not have a possessory interest. * * *" OAR 150-307.110. (Emphasis in original.)

■     Plaintiff relies upon that rule and argues that because it cannot exclude the owner and it must share the Intertie with others, it does not have exclusive possession. However, while the rule seems to envision that shared use precludes exclusive possession, it is not consistent with the case law in that regard. The issue is not whether the property is shared, but whether Plaintiff exercises sufficient control

over some portion of it to constitute possession. That inquiry requires looking at the character of the property at issue.

In *Sproul et al v. Gilbert et al*, 226 Or 392, 359 P2d 543 (1961), the Oregon Supreme Court held that ORS 307.060 was designed to tax only a possessory interest. *Sproul*, 226 Or at 403 n 1. The court posited that whether the occupant has a possessory interest is tested by asking whether he has "sufficient control over the premises to warrant the label of possession." *Sproul*, 226 Or at 406.

At issue in *Sproul* was the taxability of grazing leases entered into between ranchers and the United States Government. The court held that while those ranchers holding grazing leases had sufficient indicia of possession to render them taxable, those holding grazing permits did not. The court reasoned that the primary difference between the two classes was that permittees did not have grazing rights in any particular area. Permittees had only a general right to graze so many animals over a certain period in a general grazing district. The lessee's right was much more specific and specified a certain described area. In making that determination, the court noted that the character of the land must be considered.

The Supreme Court revisited that issue in *Ore. Summer Hm. Owners v. Johnson*, 265 Or 544, 510 P2d 344 (1973). The issue there was the taxability of the plaintiffs' interest in land owned by the United States government and administered by the Forest Service. The plaintiffs had special-use permits that allowed them to build recreational residences, which they could occupy for a certain number of months per year. The agreement between the plaintiffs and the government was entitled a "term special-use permit." The permit restricted the number of days the residence could be used, required the approval of improvements, restricted transferability of the permit, set annual fees, and imposed other restrictions associated with maintaining the area as a forest. Plaintiffs argued that their interest was similar to the permittees in *Sproul*, thus they should be tax exempt as well.

In comparing the forest use permits with the grazing permits to determine possession, the court held that "[t]he

most important factor is the degree of exclusiveness of use and the amount of control that the 'permittee' has and can exercise." *Ore. Summer Hm. Owners*, 265 Or at 549. The court found most of the forest service limitations were of the type and character that owners would impose upon themselves. *Id.* at 550. The court held that the forest service permit was a possessory interest comparable to the grazing lease in *Sproul*.

In both cases, although the taxpayers shared use of the overall property with others, they had exclusive possession of some portion of it. Thus, this court must look to the nature and character of the subject property to determine whether Plaintiff has exclusive possession. That inquiry includes looking at Plaintiff's possessory interests and the limitations placed on its use of the property.

The Intertie Agreement specifies that Plaintiff has a "capacity ownership share." While Plaintiff does not own the entire PNW AC Intertie, that characterization of Plaintiff's interest implies the ability to control at least some portion of the Intertie. However, as noted in *Sproul*, the name parties attach to a relationship does not alone determine the nature of the legal relationship created. Rather, the court must determine if the central elements of the relationship do in fact exist. *Sproul*, 226 Or at 402.

In making that determination, the court considers the limitations on Plaintiff's use of the Intertie, which are: (1) the megawatt restriction, (2) the scheduling and advance notice provisions, and (3) the fact that Plaintiff shares the Intertie with a number of other parties. The court notes that the subject properties in *Sproul* and *Ore. Summer Hm. Owners* are significantly different from each other and from the property in this case. Accordingly, the court must also consider the character of the property in question in determining whether Plaintiff's rights and limitations under the Intertie Agreement can be compared with that in other cases. *See Sproul*, 226 Or at 405.

■ The court finds that while the above restrictions limit Plaintiff's use of the property, they are of the "type and character" necessary for its smooth operation. They are the type of restrictions that multiple owners would place on

themselves in using the property. Because of the nature of the property, its use must be structured and organized among the users.

■     Although Plaintiff shares the Intertie with others, it retains exclusive control over a portion of it. Also, much like the owner of a time-share property, when Plaintiff uses the property, it uses it to the exclusion of others. Plaintiff's characterization of control would require that it have exclusive control over the entire Intertie. That is unreasonable. Such a construction would similarly require that the ranchers have exclusive control over all federal grazing land or that the summer home owners have exclusive control of the National Forest. That definition of control is too broad and does not take into account the character of the property. Here, Plaintiff has exclusive use of a portion of the premises; that is, its capacity ownership share. While it shares the total capacity with eight others, so does the rancher share the grazing land and the summer home owner share the forest.

■     One might argue that every lessee or permittee has exclusive possession of *something*. That is, the permittees in *Sproul*, who the court was unwilling to find had possession, certainly had *some* possession; at the point of consumption, their cows possessed the grass completely and to the exclusion of all other cows. But, as noted in *Ore. Summer Hm. Owners*, the issue is the degree of exclusiveness and the amount of control the occupant can exercise. Here, Plaintiff has exclusive control over a definable area, albeit rated in megawatts instead of square feet. Plaintiff can schedule and has a contractual right to use a specific area for a definite term.

Those issues become more difficult when dealing with abstract properties such as this. Electrical transmission lines, grazing land and forests are not altogether comparable subjects. Traditional notions of property rights do not easily apply when dealing with things one cannot directly observe. Certainly, Plaintiff cannot point to the cable from which it has a right to exclude others, nor can it keep others from "entering" its share, given the nature of the property. In the age of telecommunication and technology, space and time are more fluid and are not subject to the precise definitions set

out during the time of *Sproul*. While the law may need to adjust at some point to these new challenges, it is clear that, given the nature of the property, Plaintiff has exclusive control, subject to reasonable limitations, over a portion of the Intertie. As such, Plaintiff has a possessory interest under ORS 307.060 and is taxable as set out in that statute.

The parties have stipulated that: "If the court determines that the portion of the PNW AC Intertie facility used by plaintiff or any assignee of plaintiff is taxable and may be included in plaintiff's unit of property which is subject to taxation, then judgment may be entered affirming Defendant's Opinion and Order No. PTU 1996-39." Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is granted.